**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 10:54 AM July 16, 2013**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| ROBERT CHARLES WELLING, ) | CASE NO. 11-60199 |
| ) | |
| Debtor. ) | ADV. NO. 11-6088 |
| _____ ) | |
| FIRST KNOX NATIONAL BANK ) | JUDGE RUSS KENDIG |
| DIVISION OF PNB, ) | |
| ) | |
| Plaintiff, ) | **MEMORANDUM OF OPINION** |
| ) | **(NOT FOR PUBLICATION)** |
| v. ) | |
| ) | |
| ROBERT CHARLES WELLING, ) | |
| ) | |
| Defendant. ) | |

On November 2, 2011, First Knox National Bank Division of PNB ("Plaintiff") filed a complaint objecting to the discharge of Debtor Robert Charles Welling ("Debtor") under 11 U.S.C. § 523(a)(2), (4) and (6). Plaintiff's motion for summary judgment, filed on November 16, 2012, is before the court. Defendant Robert Charles Welling ("Debtor") argues that questions of material fact prevent the court from entering summary judgment.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the referral order entered by the United States District Court for the Northern District of Ohio on April 4, 2012, superseding

1

the general order of reference entered on July 16, 1984. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This Memorandum of Opinion constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## **FACTUAL BACKGROUND**

In 2006, Debtor developed a business plan to operate a logging business, Wellco Industries ("Wellco"), and presented it to Ohio Legacy Bank, Plaintiff's predecessor. On December 21, 2007, Plaintiff made an initial loan of $169,192.00 to Debtor. Over the next two and a half years, Plaintiff advanced additional monies as well as provided refinancing of existing loans. The following is a summary of the loans:

| Date of Loan | Amount | Loan Number | Maturity Date |
|---|---|---|---|
| 12/21/2007 | $169,192 | ***1335 | 12/21/2014 |
| 07/25/2008 | $ 53,000 | ***1965 | 07/25/2013 |
| 11/21/2008 | $106,175 | ***4172 | 11/21/2015 |
| 08/14/2009 | $538,201 | ***0310 | 04/14/2010 |
| 04/14/2010 | $500,003 | ***0310 | 12/01/2010 |

The promissory notes all listed collateral securing the loans. The following summarizes the specific security for each loan:

| Loan Number | Collateral in Note | Security Agreement | UCC Statement |
|---|---|---|---|
| ***1335 | 2006 John Deere Cat Skidder-scraper Freightliner tractor 2 Theurer van trailers | (1) PMSI in 2006 John Deere, Cat skidder-scraper (2) Freightliner Tractor and two Theurer van trailers | PMSI in 2006 John Deere and Cat skidder-scraper |
| ***1965 | Equipment, inventory, etc. (reference to commercial security agreement and UCC statement) | Inventory, chattel paper, accounts, etc. | Inventory, chattel paper, accounts, equipment, etc. |
| ***4172 | Same as above | Same as above | None |

2

| | | | |
|---|---|---|---|
| ***0310 | All business assets | Kershaw forestry mower | None |
| ***0310 | All business assets. Cat Skidder-scraper, Timbco Feller buncher, John Deere 6583, Kershaw forestry Mower, two 1986 Theurer Trailers and a 1998 Freightliner tractor | 2006 John Deere, Cat skidder-scraper, Timbco Feller buncher | None |

By the time Debtor filed bankruptcy on January 25, 2011, Plaintiff was owed in excess of $500,000.00 under various notes.

For much of the time the business was operating, Debtor relied on the services of his now ex-mother-in-law, Sharon Carl, for bookkeeping services.

## **DISCUSSION**

On November 2, 2011, Plaintiff filed a complaint seeking to except its debt from Debtor's discharge under three provisions of the bankruptcy code: 11 U.S.C. §§ 523(a)(2), 523(a)(4) and 523(a)(6). Section 523 provides a means for a creditor to protect its debt from a bankruptcy discharge, allowing liability on the debt to survive. Since the discharge is intended to allow a debtor to obtain a "fresh start," Patel v. Shamrock Floorcovering Serv., Inc. (In re Patel), 565 F.3d 963 (6th Cir. 2009), "exceptions to discharge are to be strictly construed against the creditor." Rembert v. AT&T Universal Card Serv., Inc. (In re Rembert), 141 F.3d 277, 281 (6th Cir. 1998). The balance struck between these often competing policies is that a discharge is intended to benefit "an honest but unfortunate debtor." Grogan v. Garner, 498 U.S. 279 (1991).

On November 16, 2012, Plaintiff filed a motion for summary judgment on its § 523(a)(2) and (6) counts of the complaint. This provision specifically excepts debts incurred by fraud from the discharge. Plaintiff brings the summary judgment motion under Federal Rule of Bankruptcy Procedure 7056, the bankruptcy complement to Federal Rule of Civil Procedure 56. To succeed in its quest for summary judgment, Rules 7056 requires Plaintiff, as the movant, to "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. Pro. 7056. All evidence, facts and inferences are viewed in the light most favorable to the nonmoving party. Superior Bank v. Boyd (In re Lewis), 398 F.3d 735 (6th Cir. 2005) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)).

I. Section 523(a)(2)

Section 523(a)(2) contains two independent grounds for nondischargeability, both

3

sounding in fraudulent conduct. Under § 523(a)(2)(A), a debt incurred by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" is nondischargeable. To establish nondischargeability under this prong, the creditor must prove, by a preponderance of the evidence,

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (2) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

Rembert, 141 F.3d 277, 280-81 (other citations omitted).

The elements for a § 523(a)(2)(B) action are found within the statute, which states that the discharge does not cover a debt to the extent it was obtained by

> (B) use of a statement in writing –
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

Plaintiff's main contention on summary judgment is that Debtor continually misrepresented his net worth through submission of false financial statements that inaccurately listed the nature and value of various business assets, including equipment. According to Plaintiff, Debtor also repeatedly misrepresented that he owned various pieces of equipment. At times, these alleged misrepresentations straddle both § 523(a)(2)(A) and (B). In general, Debtor responds by arguing that the bank, through its employee Bob Boss, was fully aware of his financial condition and directed some of his actions they now challenge. Debtor's position is that the bank cannot prove he intended to deceive it, nor can the bank demonstrate reliance on his statements.

Plaintiff has done little to assist the court in analyzing its claims. It raises a plethora of potentially false statements or representations but does not clearly articulate how the statement is materially false, a burden it clearly bears. At no point does Plaintiff identify a specific misrepresentation and walk the court through each and every element of either a § 523(a)(2)(A) or

4

(a)(2)(B) claim. This makes it difficult not only for the court to review, but also makes it virtually impossible for the opposing party to defend. Plaintiffs' approach is to point to countless inconsistencies or falsehoods with the apparent belief that the Debtor must be so bad that he can't get a discharge. The court doesn't weigh the Debtor's soul. Rather the court must be instructed how the facts specifically meet the statutory elements. The court also points out that Plaintiff's efforts were made in a thirty-three page brief – thirteen pages longer than Local Bankruptcy Rule 9013-2(a) permits without leave, which Plaintiff failed to obtain. The court's frustration cannot be expressed too lightly.

    A. Representations

    1. <u>December 21, 2007 Promissory Note and Commercial Security Agreement</u>

On December 21, 2007, Plaintiff lent Debtor $169,192.00 (Pl.'s Ex. A-1, ECF No. 35-3.), secured by a purchase money Security interest in a 2006 John Deere 648G III, SN#DW848GX601955 and a Cat Skidder-scraper, SN#54K369. (Pl.'s Ex. B-1, ECF No. 35-4.) According to Plaintiff, Debtor provided an invoice from M.J. Wagner dated January 7, 2007 (Pl.'s Ex. O, p. 40, ECF No. 35-17) related to his purchase of a Skidder-scraper as his proof of ownership. Plaintiff complains that the item went missing and Debtor testified, during a deposition dated August 13, 2012 that he did not know the whereabouts of the Skidder-scraper (Pl.'s M. Summ. J. at 13). The court is not convinced Plaintiff proved § 523(a)(2) nondischargeability on these grounds.

    First, the invoice contains no proof of ownership but is merely a proposed sales contract. The invoice clearly states that the "total due" is $38,000.00. There is no proof of consummation of the sale. The court cannot find evidence of ownership from the invoice. Consequently, the court cannot find that Debtor misrepresented his ownership through this document. In fact, Debtor testified that he had never seen the invoice before. (Robert C. Welling Dep. 287:3-6, ECF No. 35-21.)

    The security agreement is perplexing. It states that Debtor is granting a purchase money security interest in the Skidder-scraper. But this seems suspect based on the dates of the invoice, January 7, 2007, and the promissory note and security agreement, both dated December 2007. The court questions whether the bank's interest was a purchase money interest.[1] However, to the extent that Debtor's signature on the document creates a representation of ownership in the Skidder-scraper, the court finds that Plaintiff has not shown that this statement is false. Plaintiff points to deposition testimony in which it claims Debtor states he doesn't know the whereabouts of

---

[1] There is some question whether Debtor ever owned the skidder-scraper. Plaintiff's motion for relief from stay, filed on June 23, 2011, acknowledges that "Debtor has testified he has no knowledge of this item." (Pl.'s M. Relief from Stay ¶ 9, Main Case No. 11-60199, ECF No. 36.) Debtor's deposition testimony suggests that the wrong item was listed in the security agreement. Instead of the skidder-scraper, a Kershaw mower should have been listed because it was purchased with the bank's money and was a piece of equipment he used in his business from "day one." (Welling Dep. 157:16-158:15, ECF No. 35-21.) It is possible that the bank saw the invoice and mistakenly or inadvertently assumed ownership of the skidder-scraper and the error went unnoticed by the bank or Debtor.

the Skidder-scraper. This characterization of Debtor's deposition testimony is inaccurate. Debtor doesn't speak to the location of the Skidder-scraper, nor was he asked about it. Rather, Debtor testifies that he's never seen the invoice before. It is the person deposing Debtor that comments on the whereabouts of the Skidder-scraper, not Debtor. Further, even if Debtor did not know the whereabouts of the Skidder-scraper, Plaintiff failed to show how this later event had bearing on its decision to loan money in 2007. Plaintiff needs to show that Debtor misrepresented ownership at the time of the loan transaction, which it failed to do. The court is left wondering whether the Bank inadvertently assumed ownership of the skidder-scraper from the invoice and mistakenly included it in the security agreement and Debtor failed to catch the error. Although the court recognizes that Debtor signed the documents, the court is also cognizant of the fact that the documents were drafted by the Bank, not Debtor.

    2. 2009 equipment list

Exhibit K is a document dated May 21, 2009 titled "Wellco Equipment List." It contains a list of assets, their values, and the amounts owed, if any. The bottom line shows a total value of $1,009,500.00 for the equipment and liabilities totaling $607,063.00, or net equity in excess of $400,000.00. Plaintiff alleges this statement was provided in order to obtain a loan in 2009. It further alleges that it later learned that there were misstatements contained in the document.

    i. The Mike Wagner equipment

It is Plaintiff's position that Debtor included equipment in the list that he did not own, thereby creating a false representation of his assets, in order to inflate his net worth and obtain additional money. Included on the list was a 1980 Mack Service Truck, valued at $30,000.00, and a 1985 Mack dump truck, valued at $10,000.00, both free and clear of any liability. When Debtor failed to list these in the petition, Debtor was questioned about them at the 341 meeting. Debtor testified that they were owned by Mike Wagner but titled in Debtor's name in order to obtain licenses and insurance. He further testified that he had given the titles back to Mr. Wagner over a year ago. In his affidavit opposing Plaintiff's motion for summary judgment, Debtor states that Plaintiff's agent, Bob Boss, was fully aware that these items were not his. (Def.'s Aff. ¶ 29, ECF No. 41-2.)

Plaintiff argues that Debtor's affidavit amounts to an impermissible attempt to change his prior testimony in order to create an issue of fact and avoid summary judgment, a tactic prohibited in the Sixth Circuit. *See* Reid v. Sears, Roebuck and Co., 790 F.2d 453 (6th Cir. 1986) (citation omitted). The key question is whether the affidavit directly contradicts the prior testimony. O'Brien v. Ed Donnelly Enter., Inc., 575 F.3d 567, 593 (6th Cir. 2009) (citing Aerel, S.R.L. v. PCC Airfoils, LLC, 448 F.3d 899, 908 (6th Cir. 2006)). If it does, it cannot be used. Id. If it is not in direct contradiction, then it can be used to the extent it is not merely "an attempt to create a sham fact issue." O'Brien, 575 F.3d at 593 (citing Aerel, 448 F.3d at 908) (quoting Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986))).

In this case, the court finds no direct contradiction between Debtor's 341 testimony and his affidavit. The affidavit merely expands his prior testimony by offering an explanation for why he included the equipment. He is not changing his previous statement(s) from the 341 meeting. In fact, he's admitting that he did use another's collateral for the very purpose Plaintiff seeks to prove – in an effort to better his bottom line to obtain additional money. He's simply now stating he did so with the bank's knowledge and approval, which may go to either Debtor's intent in making the statement or the bank's reliance on the statement. Additionally, since the chapter 7 trustee did not fully question Debtor on these points during the 341 meeting, the court finds that Debtor's affidavit "reveal[s] information that was not fully explored during that testimony," Aerel at 909 (citing Aerel, S.R.L. v. PCC Airfoils, LLC, 371 F.Supp.2d 933, 942 (N.D. Ohio 2005), negating any argument that Debtor is merely attempting to manufacture a sham factual issue. The court will therefore allow the affidavit for this purpose.

The court finds that the affidavit does create a genuine issue of material fact on whether Debtor possessed an intent to deceive Plaintiff by including the Mike Wagner equipment in the equipment list. While intent is not measured subjectively, and recklessness can be a basis for a finding of an intent to deceive, *see* Investors Credit Corp. v. Batie (In re Investors Credit Corp.), 995 F.2d 85 (6th Cir. 1993), if Debtor included the equipment at the direction or with the approval of the bank, it could negate any perceived intent to deceive the bank. Determining this factual issue is a matter for trial, not summary judgment.

    3. Debtor's knowledge of Wellco's financial condition

Debtor's ex-mother-in-law, Sharon Carl, did his bookkeeping from the start of his business through 2010. He testified that he knew she kept two sets of books. (May 3, 2001 341 Tr. 42:19-24.) Plaintiff has provided two different documents, a 2008 Profit & Loss statement ("P&L") dated September 14, 2008 (Pl.'s Ex. N, ECF No. 35-16) and a copy of Debtor's 2008 tax return (Pl.'s Ex. M, ECF No. 35-15) in an attempt to support its theory that something shady was occurring, more specifically that Debtor was using one set of numbers to apply for credit and another set of numbers to file tax returns. Plaintiff posits that Debtor should have alerted the bank about his concerns and should not have continue to rely on financial information prepared by Ms. Carl to seek additional financing.

For two reasons, the court cannot rely on any differences between the P&L and the 2008 tax return. First, the P&L provided by Plaintiff is only a partial document. It clearly shows that the document should be four pages long but only the first two pages are provided. What was provided does not contain a full description of expenses. Second, the P&L is for a partial year, from January to August 2008. Clearly, the numbers in the tax return could have changed significantly in the final four months of the year, resulting in very different figures on the 2008 tax return.

Additionally, Debtor proffered one possible explanation for the two different sets of books. When questioned by the chapter 7 trustee, Debtor explained that the loss was due to equipment

7

depreciations. The tax return does show that Debtor was depreciating various pieces of equipment.

The court cannot find that Plaintiff has proved, by a preponderance of the evidence, a concrete statement, in writing or otherwise, made by Debtor that can serve as the basis for a § 523(a)(2) claim on this ground.

   4. 2010 Equipment List

Similar to the argument advanced regarding the 2009 equipment list, Plaintiff contends that Debtor "not only listed his financial net worth and Wellco's ownership interest in the 2010 Equipment List, without any creditor's liens, at grossly disproportionate or overstated values but also included equipment that was not owned by him or Wellco." (Pl.'s Mot. Summ. J., p. 16.) If true, this could serve as the basis for a § 523(a)(2) claim. The problem is Plaintiff failed to specifically identify any inaccuracies in the list. Plaintiff merely suggests that Debtor was dishonest and granted security interests in items he did not own. This bald allegation, without any factual support, does not create a factual basis for nondischargeability based on fraud or misrepresentation.

The machine-printed 2010 equipment list bears the date of "January 2010" in the upper right hand corner. (Pl.'s Ex. F, ECF No. 35-8.) It appears to be taken directly from Debtor's handwritten list of equipment. In his affidavit, Debtor contends when he prepared the handwritten list of equipment, he never intended it to be used as a basis to secure financing. He avers "Carl approached me in 2009, stating that Boss wanted an equipment list by the end of that business day so Boss could show the board that I have enough equipment to make the payments to First Knox, not for the basis of extending further credit." (Def.'s Aff. ¶ 18, ECF No. 41-2.) He states he was instructed to "list all of the equipment that I had on my current job site whether I owned it, rented it, or owed money on it." (Id. at ¶ 19.) "I had no intentions of this hand written (sic) equipment list to be the basis of any future financing." (Id. at ¶ 21.) In fact, Debtor's response to the motion for summary judgment indicates that he had exhausted his credit with the Bank by late 2009. (Debtor's Resp. to M. Summ. J, p. 4, ECF No. 41.) If true, this supports his position. Therefore, Debtor's intent in preparing the statement remains a question of fact.

Plaintiff relies on the fact that a writ of execution in December 2010, against property listed in the January 2010 equipment list, was returned with the statement "[t]here is nothing there." (Pl.'s Ex. J, ECF No. 35-12.) The writ of execution actually says, in its entirety, "Equipment had been moved. There is nothing there." (Id.) The writ fails to prove anything about the accuracy of the ownership or value of the equipment in the 2010 equipment list.

Plaintiff again points to Debtor's inclusion of equipment owned by a third party, Mike Wagner, as a basis for nondischargeability. This time, Plaintiff points Debtor's designation concerning the ownership or financing of the equipment as the false statement. The deposition

8

testimony that Plaintiff now relies on focuses on how Debtor listed "own" for equipment[2] that was actually owned by Mike Wagner.[3] Plaintiff obviously takes issue with Debtor's failure to accurately state his interest in the equipment. The court acknowledges that Debtor's approach was suspect and potentially misleading and created a false statement. However, as stated in section I(A)(2)(i) above, this is not the only element that Plaintiff needs to prove. Plaintiff must also prove Debtor intended to deceive the bank, which it did not do. Debtor's affidavit states that the bank knew he was including equipment owned by a third party to bolster his bottom line and obtain additional financing from the bank. Thus, a question of fact exists on other elements of the claim.

     5.   <u>Written statements – Exhibits A, B, C, D, E, F and G</u>

Plaintiff argues that Exhibits A, B, C, D, E, F and G[4] are all statements in writing that were materially false and concerned the financial condition of Debtor and/or Wellco, his sole proprietorship. The court disagrees, in part.

Exhibit A is a promissory note dated December 21, 2007. While it is a statement in writing, Plaintiff points to nothing in it that is in respect to the Debtor's financial condition. Similarly, Exhibit B is a Commercial Security Agreement dated December 21, 2007. Again, there is nothing in the document that speaks to Debtor's financial condition. To the extent that Debtor has made a false statement regarding assets that qualifies as a false statement, the only statement that Plaintiff may have identified as problematic relates to the skidder-scraper, which has been discussed at length above. The same is true of Exhibit C, a UCC Financing Statement filed on December 20, 2007. The court rejects these three documents as the basis for a § 523(a)(2)(B) action.

     i.   2008 Balance Sheet (Pl.'s Ex. E, ECF No. 35-7)

Plaintiff asserts that the 2008 balance sheet was one of the documents submitted that induced it to continue to loan money to Debtor. Plaintiff points to Debtor's deposition testimony, where he admits that he doesn't know if the figures are correct or not, as the basis for its argument that the statement represents use of a materially false written statement by Debtor. Plaintiff failed to prove this.

On summary judgment, the court must view the facts in the light most favorable to the non-moving party, here Debtor. Looking at the testimony, Debtor admits he doesn't know if the figures in the balance sheet are accurate. His lack of knowledge does not prove the falsity or veracity of the information. He simply doesn't know. It was up to Plaintiff to show that the

---

[2] Plaintiff does not identify the specific equipment that was incorrectly designated as owned by Debtor/Wellco.
[3] The court did note Debtor did testify that Mike Wagner had titled the equipment to Debtor/Wellco to allow Debtor to obtain licenses and insurance. (March 22, 2011 341 Tr. 23:3-20, ECF No. 35-19.) No one discussed the important of legal title as it relates to ownership.
[4] Although Plaintiff references all these exhibits, Plaintiff did not include arguments on all of these exhibits.

information was false or misrepresented, which it has not done.

      ii.      The warranty (Pl.'s Ex. G, ECF No. 35-9)

On April 14, 2010, the bank restructured an existing loan.[5] On the same date, Debtor signed a boilerplate statement stating "there has been no material adverse change in borrower's financial condition as disclosed in borrower's most recent financial statement to lender." (Pl.'s Ex. G, ECF No. 35-9.) Plaintiff argues this was a false statement because Debtor did not own all the equipment listed in the 2010 equipment list which it apparently considers to be "Debtor's most recent financial statement" for the purposes of the warranty. As proof of its claim that there were undisclosed changes, Plaintiff says that by the time the petition was filed on January 25, 2010,[6] only seventeen of the twenty-eight items were listed in the petition.

While the contents of the equipment list may constitute representations made by Debtor to the Bank, the court cannot agree that the equipment list was the financial statement referenced in the warranty. The information contained in the equipment list comprises only a portion of information typically included in a financial statement. As Plaintiff's Exhibit D indicates, Debtor previously provided at least one personal financial statement[7] to the Bank. The court is not convinced that Debtor intended the equipment list to provide a financial statement to secure additional financing or recognized it as the "most recent financial statement" referenced in the warranty.

      iii.      Valuation differences reflected in the petition

At several points, Plaintiff also references conflicting information in documents supplied prebankruptcy to the Bank and Debtor's bankruptcy petition. For instance, Plaintiff points out that the petition lists only seventeen pieces of equipment while the equipment list contains twenty-eight items. Plaintiff urges the court to find this was a material misrepresentation.

The differences between the equipment list and the petition could, in certain situations, be the basis for finding a material misrepresentation. The differences alone, however, do not establish a *per se* misrepresentation. Plaintiff must identify a statement by Debtor, establish that it was a misrepresentation to the Bank, and show that it was material. Plaintiff failed in this task.

Plaintiff left it to the court to compare the schedules with the equipment list, identify which items were missing, and determine the difference in values. This is not the duty of the court. Plaintiff has done nothing to identify how the equipment list was wrong other than to say it was

---

5 It doesn't appear that any new money was lent to Debtor. The restructured loan matured on December 1, 2010.
6 The correct date is January 25, 2011.
7 In his affidavit, Mr. Boss states that Debtor provided the December 1, 2008 financial statement to the Bank "to induce First Knox to make a commercial loan to Debtor." (Aff. of Robert E. Boss, ¶ 10, ECF doc. 35-2.) The court notes that this financial statement is dated after both of the loans advanced by the Bank in 2008 and approximately nine months before Debtor obtained a loan in 2009.

different from the schedules. There could be legitimate reasons for the differences, including inadvertent mistakes, ordinary course sales or trade-ins of equipment, loss of equipment from age or use, and so on.

Plaintiff does specifically mention that three items that were listed in the equipment list, and subject of a motion for relief from stay, are still unaccounted for by Debtor. They are the skidder-scraper and two Theurer van trailers. The court discussed the skidder-scraper in detail above, concluding that it is not clear that Debtor ever owned the skidder-scraper in spite of the fact it is listed as collateral. Concerning the two trailers, Plaintiff acknowledges that Debtor contends he scrapped the two trailers. Based on the information in the record, it appears that Debtor purchased the two van trailers on or about February 12, 2007 for a total price of $3,000.00. According to Mr. Boss's affidavit, they were scrapped for $2,000.00 and the Bank did not receive the money, in spite of its liens on the title.[8] (Aff. of Robert E. Boss ¶ 30, ECF No. 35-2.) Even if absolutely true, where is the material misrepresentation that forms the basis of a 523(a)(2)(A) or (B) claim? How did the Bank rely on this to its detriment? The Bank doesn't challenge the values used by Debtor, nor allege that he included the trailers in an equipment list after they were scrapped. The trailers do not appear to be listed on the 2010 equipment list.[9] Dispositions of collateral can form the basis for nondischargeability but Plaintiff has not developed a claim on this theory. Plaintiff's argument in this motion focus on Debtor's supply of misinformation that led the Bank to lend money to Debtor.

Plaintiff also points to the $35,000 tool valuation in the 2010 equipment list and the $3,000 valuation on Schedule B. Granted, the difference appears excessive. However, Plaintiff didn't do anything other than cite the disparity in the values. It simply cannot be reasonably inferred that the only possible explanation for the difference is that Debtor lied on the equipment list. It is unclear what valuation Debtor used, such as retail or liquidation, in the equipment list or the schedules. As a result, the numbers could simply reflect an apples to oranges comparison.

After a thorough review of Plaintiff's arguments, the court cannot conclude that Plaintiff met its burden of proving an actionable misrepresentation under either 523(a)(2)(A) or (B). Either Plaintiff failed to establish the requisite basis or failed to show an absence of questions of fact. Consequently, the court cannot award summary judgment.

B. Reliance

Plaintiff argues that by loaning Debtor money, it has proved its reliance on the information supplied by Debtor. This view is too simplistic. Plaintiff is required to demonstrate its reliance in order to meets its burden of proof.

The court cannot determine what specific information Plaintiff relied on at any particular

---

[8] Debtor avers that the money was deposited in his business account. (Aff. of Robert C. Welling ¶ 28, ECF No. 41-2.)
[9] Unless they are considered one of the six "chip" trailers valued at $4,000.00 each.

11

point. It is not clear what information Plaintiff had in front of it at any time it was considering lending money to Debtor. Presumably, the first loan was based, in part, on the business plan dated December 1, 2006. Plaintiff never takes any issue with this document. Much of Plaintiff's motion is centered on the 2010 equipment list which is dated January 2010. Plaintiff did not advance any new money after this date but did restructure an existing loan. Plaintiff doesn't offer any concrete explanation establishing its reliance on the equipment list that satisfies its burden of proof.

Plaintiff also references the 2008 balance sheet. Looking at that document, it shows total equity of just over $191,000.00. Several things are noteworthy. First, Debtor's cash accounts are nearly $98,000.00 negative. The balance sheet values machinery and equipment at just under $850,000.00. Long term liabilities against the equipment total $805,000.00. At most, this shows $45,000.00 in equity in equipment which is about 10% of the total reflected in later documents, a significant difference.

The reliance standards in § 523(a)(2)(A) and (B) are not identical. Under § 523(a)(2)(A), the standard is "justifiable reliance" while § 523(a)(2)(B) requires actual, reasonable reliance. Oster v. Clarkston State Bank (In re Oster), 474 Fed.Appx. 422, 425 (6th Cir. 2012) (unpublished) (citing Field v. Mans, 516 U.S. 59, 68 (1995) and BancBoston Mortg. Corp. v. Ledford (In re Ledford), 970 F.2d 1556, 1560 (6th Cir. 1992)). The Sixth Circuit identified five factors to help a court determine whether a creditor's reliance is reasonable:

> (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

Oster, 474 Fed.Appx. at 425 (citing Ledford, 970 F.2d at 1560).

Debtor has pointed to several items that challenge Plaintiff's reliance, including whether any reliance was reasonable or justifiable. For instance, Debtor points out that he had *daily* contact with Bob Boss about his financial situation. Debtor also put together a graph that shows that his bank accounts were in the negative, sometimes as much as $70,000.00, for the better part of 2008 and 2009. He also provided a copy of a civil docket from the Tuscarawas County Court of Common Pleas that shows a lawsuit was filed against Debtor on March 26, 2009 and that successful service of orders of garnishment were made on Plaintiff on April 30, 2009. Plaintiff responded to the garnishment order on May 6, 2009 indicating that no monies were available. These challenges to Plaintiff's reliance are enough to create genuine issues of material fact,

12

making it impossible to grant summary judgment.

      C. Intent to deceive

Plaintiff contends that Debtor intended to deceive the Bank with his misrepresentations/ false statements. The court cannot consider Debtor's intent to deceive without knowing the specific false statement or misrepresentation at issue. Consequently, any discussion of Debtor's intent must be reserved until proof of an underlying false statement or misrepresentation.

**II.    Section 523(a)(6)**

This provision of the bankruptcy code excepts debts resulting from "willful and malicious injury" from discharge. As with the § 523(a)(2) claim, Plaintiff bears the burden of proof by a preponderance of the evidence. <u>Morris v. Brown (In re Brown)</u>, 489 Fed.Appx. 890 (6th Cir. 2012) (unpublished) (citing <u>Grogan v. Garner</u>, 498 U.S. 279, 286 (1991)). The Sixth Circuit advises that "[f]or the discharge exception under § 523(a)(6) to apply, a debtor must: (1) 'will or desire harm[;]' or (2) 'believe that injury is substantially certain to occur as a result of his behavior.'" <u>Brown</u>, 489 Fed.Appx. 890 (citing <u>Markowitz v. Campbell (In re Markowitz)</u>, 190 F.3d 455, 465 n. 10 (6th Cir. 1999)). It is the injury that must be intended, not merely the act that causes the injury. <u>In re Kawaauhau v. Geiger</u>, 523 U.S. 57, 61 (1998).

Plaintiff clearly missed the latter point. It focuses its minimal arguments under § 523(a)(6) on Debtor's acts, not the resulting injury. This does not satisfy the burden of proof to establish a willful and malicious injury. The court will deny summary judgment on this count.

## **CONCLUSION**

A creditor bears the burden of proof in nondischargeability actions. Plaintiff failed to meet its burden and the court cannot award summary judgment. The court will immediately enter an order in conformity with this opinion.

                #       #       #

**Service List:**

Duriya Dhinojwala
Critchfield, Critchfield & Johnston, LTD
4996 Foote Road
Medina, OH 44256

Nicole L. Rohr
Thrush & Rohr LLC
4410 22nd Street NW
Canton, OH 44708

Robert Charles Welling
617 Perry Drive
Canton, OH 44708